**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**ALISA F.,**

**Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

**Case No. 1:24-cv-01198-TK**

**OPINION AND ORDER**

## OPINION AND ORDER

This case is before the Court to consider a final decision of the Commissioner of Social Security which denied Plaintiff's application for supplemental security income. That final decision was issued by the Appeals Council on November 13, 2004. After filing the complaint in this case, Plaintiff moved for judgment on the pleadings (Doc. 8) and the Commissioner filed a similar motion (Doc. 15). For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## I. BACKGROUND

Plaintiff protectively filed her application for benefits on February 25, 2022, alleging a disability beginning on October 1, 2001. After initial administrative denials of her application, Plaintiff took part in a hearing before an Administrative Law Judge on October 12, 2023. Both Plaintiff and a vocational expert, Christine Spaulding, testified at the hearing.

The ALJ issued an unfavorable decision on February 2, 2024. The ALJ found, first, that Plaintiff had not engaged in substantial gainful employment since her application date. Next, the ALJ concluded that Plaintiff suffered from severe impairments including lumbar and cervical spine degenerative disc disease, posttraumatic stress disorder, generalized anxiety disorder, major depressive disorder, personality disorder, and a substance abuse disorder. The ALJ further found that none of these impairments, considered singly or in combination, met or equaled the criteria for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff could perform a limited range of light work. She could occasionally climb ramps or stairs but

not ladders, could occasionally balance, stoop, kneel, crouch, and crawl, could reach no more than frequently, could tolerate no more than occasional exposure to work environments with temperature extremes, could do simple, repetitive work with no more than occasional workplace changes, and could tolerate only occasional interaction with the public.

The ALJ next determined that Plaintiff had no past relevant work. However, based on the testimony of the vocational expert, ALJ concluded that Plaintiff could perform unskilled light jobs such as price marker, cleaner, and collator operator, and that these jobs existed in significant numbers in the national economy. Consequently, the ALJ found that Plaintiff was not under a disability as defined in the Social Security Act.

In her motion for judgment on the pleadings, Plaintiff raises these arguments:

> 1. Improper substitution of the ALJ's "non-medical" judgment as a lay person over that of any doctor regarding [Plaintiff's] reaching limitations.
>
> 2. Failure to properly evaluate the favorable opinion of treating physician assistant Ms. Galley under 20 C.F.R. §416.920c.
>
> 3. Improper substitution of the ALJ's "non-medical" judgment as a lay person over that of a psychiatrist or psychologist regarding [Plaintiff's] mental limitations.

Plaintiff's memorandum, Doc. 8-1, at 1.

## II. The Key Evidence

### A. Hearing Testimony

Plaintiff, who was 53 years old at the time of the administrative hearing, first testified that she had a tenth grade education and that she last worked in 2001 as a factory worker. She said she could no longer work due to depression and anxiety and because of physical issues with her back and neck related to a car accident that happened in 2019. Those latter issues had been treated with physical therapy but not surgery. For her depression, Plaintiff was seeing a psychotherapist twice per month and a psychiatrist once every two months. She expressed feelings of panic when out in public and did not go out much, even to shop.

Plaintiff further testified that she lived with her daughter and that she had only occasional social contact with anyone else. Two grandchildren also lived in the household and she had babysat for them on occasion. When asked further about her back and neck issues, she said that she was taking ibuprofen and she was scheduled to have injections for the pain. Bending and lifting were difficult for her, as were sitting and standing. She could only walk for about ten minutes at a time. Cold temperatures and humidity made the pain worse.

The vocational expert, Ms. Spaulding, was asked questions about a person with Plaintiff's vocational profile who could work at the light exertional level but had a number of postural, manipulative, and environmental limitations and who could also do only simple, repetitive tasks in a relatively static work environment and with limited contact with the public. In response, she identified jobs like price marker, cleaner, and collator operator that such a person could do, and she gave numbers for those jobs as they existed in the national economy. She further testified that chronic off-task behavior for more than six minutes per hour would not be tolerated, nor more than one absence per month. Lastly, she stated that if the person were essentially limited to sedentary work, those jobs could not be performed.

**B. The Medical Evidence**

Pertinent medical records show the following. After being involved in a car accident in June of 2019, Plaintiff was seen at the emergency room and thereafter was treated at Medical Care of Western New York. According to a note dated June 8, 2020, a little over a year after the accident, she was continuing to report pain in her spine, shoulders, and right knee. To that point, she had not undergone any physical therapy but she was taking medication to reduce muscle spasms and was seeing a psychologist on a regular basis due to anxiety and depression related to her physical injuries. MRI results from October of 2019 showed changes at multiple levels. Lumbar spine studies showed, most significantly, a herniation and annular tear at L5-S1 extending into the spinal canal. Other tests indicated some tendinopathy in the left shoulder and some mild findings in the right shoulder. There were also some signs of carpal tunnel syndrome. As of the date of the examination, the range of motion of her shoulders had shown improvement but there was still limitation in the range of motion of the cervical and lumbar spines. She was referred to physical therapy and encouraged to continue chiropractic and acupuncture treatment. The note stated that she was unable to return to gainful employment at that time. That conclusion was the same as noted in previous records from the same treatment provider.

Additional medical records from 2021 and 2022 show that Plaintiff continued to report generalized pain in her back, neck, and shoulders, but she had not participated in physical therapy. She had been prescribed ibuprofen for the pain as well as cyclobenzaprine for muscle spasms. X-rays of the lumbosacral spine taken in 2021 showed that disc spacing was maintained and the joints were unremarkable in appearance. X-rays taken of the left and right knees were also negative, but a study of the neck showed mild degenerative changes at C5-6 and C6-7. In 2023 Plaintiff was examined by Dr. Farrell, and his notes show that she had some decreased sensation in the arms. He reviewed studies showing some multilevel intravertebral disc height loss as well as associated osteophyte formation, and thought that she had cervical degenerative disc disease with possible radiculopathy.

There are numerous notes from Plaintiff's counseling sessions as well. As summarized by the ALJ, those notes generally show that Plaintiff reported depression, anxiety, and difficulty concentrating as well as panic attacks when in crowded environments. She also admitted to using crack cocaine.

### C. Opinion Evidence

There are no consultative examination reports. Plaintiff's treating nurse practitioner, Gerald Turk, completed a form on May 16, 2023, cosigned by Plaintiff's counselor, Lori Ricupino, stating that Plaintiff had been diagnosed with bipolar I disorder, PTSD, panic disorder, and cocaine dependence. That form indicated that she had a marked impairment in the ability to use reason and judgment to make work-related decisions, and it also noted five other marked or extreme limitations in the area of concentration and maintaining persistence and pace, all due to problems sustaining concentration and hyperfocus on symptoms of anxiety and panic. The treating sources did not think Plaintiff could manage her psychologically-based symptoms at all and also concluded that she had moderate restrictions in her ability to interact with others. Finally, they commented that her substance abuse exacerbated her symptoms but did not cause them. (Tr. 631-33).

Jill Galley, a treating physician's assistant, also completed a functional capacity form. On it, she indicated that Plaintiff suffered from disc disease of the cervical and lumbar spines, chronic pain, and radiculitis. Those conditions prevented Plaintiff from walking more than a block without pain, necessitated work breaks every 20-30 minutes, and would cause her to miss three or four days of work per month. (Tr. 636-37).

State agency physicians also reviewed the records. As to physical capabilities, Dr. Koening expressed the view that Plaintiff could do light work. Dr. Dekeon, a psychologist, did not think she had a severe mental impairment, but she did have a mild degree of impairment in several work-related areas.

## III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind

> might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV. DISCUSSION

### A. Substituting Lay Opinion

Plaintiff's first and third claims of error both assert that the ALJ erred in substituting his lay opinion for that of the medical experts, or, alternatively, formulating a lay opinion about her residual functional capacity purely on the basis of raw medical data. The Commissioner responds that the issue is simply whether substantial evidence supports the ALJ's conclusion and that, in this case, it does.

Turning first to the issue of reaching limitations, Plaintiff's argument is that, after rejecting the opinion of physician assistant Galley and after finding that state agency reviewer Dr. Koenig failed to impose any reaching restrictions, the ALJ was left with nothing other than raw medical data upon which to base his functional capacity assessment. She contends that the medical evidence, which, as noted above, includes symptoms of carpal tunnel syndrome, bilateral shoulder injuries, and cervical spinal disease, had to be interpreted by a medical expert in order to determine how that evidence affected Plaintiff's ability to reach. She concludes that this "gap" in the evidence both triggered a duty on the ALJ to develop the record further and justifies an order of remand.

This Court has often addressed the issue of when an ALJ may craft a residual functional finding that does not entirely comport with the opinion evidence of record. The relevant precepts are well-stated in *Deanna K. v. Comm'r of Soc. Sec*., 2023 WL 5443901, at *5 (W.D.N.Y. Aug. 24, 2023), where the Court said:

> The ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Benman v. Comm'r of Soc. Sec*., 350 F. Supp. 3d 252, 256-57 (W.D.N.Y. 2018) (*quoting Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). But an ALJ is "not a medical professional," and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Id*. at 257 (*quoting Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018)).

> An ALJ may not, therefore, substitute his own judgment for competent medical opinion, *see Quinto v. Berryhill*, No. 17-CV-24, 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017), and an ALJ's RFC determination "without a medical advisor's assessment is not supported by substantial evidence," *Dennis v. Colvin*, 195 F. Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). However, "[a]n ALJ's conclusion need not perfectly correspond with any of the opinions of medical sources cited in his decision." *Benman*, 350 F. Supp. 3d at 257 (*quoting Matta*, 508 F. App'x at 56) (internal quotation marks omitted). Moreover, "remand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record, inasmuch as any alleged error in this regard inures to the claimant's benefit." *Baker v. Berryhill*, No. 15-CV-943, 2018 WL 1173782, at *4 (W.D.N.Y. March 6, 2018).

This is what the ALJ had to say about reaching limitations. As Plaintiff correctly notes, the ALJ determined that the opinion of Ms. Galley - the only treating source opinion on the issue of physical limitations - was unpersuasive because it was not supported by the medical evidence. In particular, the ALJ found nothing in the record to suggest that Plaintiff could not sit, stand, and walk for a total of eight hours in a workday, needed frequent unscheduled breaks, or would miss multiple days of work per month. (Tr. 29-30). However, because Ms. Galley did not indicate that Plaintiff had any reaching restrictions, the ALJ did not comment on that particular limitation when analyzing her opinion. As to Dr. Koenig, who concluded that Plaintiff could perform a relatively full range of light work, the ALJ also found his opinion only partially persuasive because a restriction to light work comported with the medical evidence, and the ALJ cited those portions of the record which supported that finding. (Tr. 29). Dr. Koenig also did not impose any reaching restrictions. However, the ALJ determined that Plaintiff had limitations not addressed by Dr. Koenig, stating that

> [t]he undersigned adds limitations for occasional climbing of ramps and stairs, balancing, stooping, crawling, kneeling, and crouching, no climbing ladders, frequent reaching, and no more than occasional exposure to work environments with temperature extremes based on the claimant's reports of continued neck and lower back pain exacerbated by lifting, bending, sitting, standing, and walking, physical examinations showing restricted range of motion in her cervical and lumbar spine, as well as objective imaging showing cervical and lumbar degenerative disc disease ....

*Id.* Plaintiff does not take issue with the postural limitations set forth in this statement, but rather contends that the restriction to frequent reaching must have been a product of the ALJ's own lay interpretation of the evidence relating to both shoulder and neck impairments.

As the Commissioner correctly notes, had the ALJ simply adhered to the medical opinions on the issue of Plaintiff's ability to reach during the workday, he would have found that

she had no restrictions at all in that area, a finding which would not have altered the vocational expert's testimony that a person with Plaintiff's limitations could do certain light jobs. The Court also notes that Plaintiff herself did not testify to any restrictions in her ability to use either of her arms for reaching. Given this state of the record, if the ALJ did err, that error produced a residual functional capacity finding that was more favorable to Plaintiff than the medical opinions suggested. As the Commissioner argues, this Court has often stated that when an ALJ makes a finding, based on medical evidence, that a claimant is more limited than the expert opinions conclude, any error in that determination is harmless at best and does not provide a basis for remand. *See, e.g., Shauna N. B. v. Comm'r of Soc. Sec.*, 2025 WL 961466, *5 (W.D.N.Y. Mar. 31, 2025)(citing cases). Consequently, Plaintiff's first claim of error lacks merit.

The other issue on which Plaintiff claims the ALJ used his own lay judgment improperly is the extent of her mental limitations. Her argument is similar; she says that the ALJ, after rejecting all of the medical opinions on the subject, was left with only raw data upon which to formulate a mental residual functional capacity. Plaintiff asserts that choosing a "middle ground" between competing medical opinions is simply improper and has been repeatedly criticized by the courts. The Commissioner counters this argument by suggesting that Plaintiff is not claiming that the ALJ's decision lacks substantial support in the record and has therefore waived this claim for relief.

Addressing the Commissioner's argument first, the Court observes that a claim that an ALJ improperly substituted his lay judgment for that of the medical experts is, in fact, a claim that the ALJ's ultimate decision is not supported by substantial evidence in the record. Even if Plaintiff has not explicitly made that assertion, she has certainly presented a legal claim that raises the question of whether the ALJ's decision is properly based on the record. Consequently, there is no waiver here.

In order to address Plaintiff's claim, it is helpful to review the ALJ's relevant decision-making process. As Plaintiff points out, the ALJ first found Mr. Turk's and Ms. Ricupino's opinion to be unpersuasive due to lack of support in the evidence. He concluded that since Plaintiff was able to perform "multiple household chores, prepare meals, shop for multiple items, manage her finances, and read," and because "objective clinical findings on mental status examinations show[ed] intact cognitive functioning, attention, and concentration," she did not have extreme or marked limitations in working at a consistent pace, making decisions, and working closely with others. (Tr. 30). He also rejected any extreme limitations on managing symptoms and completing a work day without multiple interruptions because the records showed that Plaintiff's mood improved with medication and she presented with a normal mood and affect at her examinations. *Id*. However, the ALJ also found Dr. Dekeon's opinion of no severe mental impairments to be unpersuasive because it was "inconsistent with claimant's reports of continued anxiety, depression, panic attacks, and difficulty with managing her mood lability, tolerating crowds, remaining calm, remembering and concentrating generally and maintaining attention...." *Id*. He then cited the same factors used to discount the treating sources' opinion to limit Plaintiff

to the performance of simple, routine tasks with occasional workplace changes. The ALJ did not directly explain the limitation to occasional interaction with the general public. *Id*.

This claim differs materially from the one asserted about physical limitations. Here, there is evidence in the record not only of severe mental impairments - evidence that the ALJ accepted - but of limitations in various areas of work-related functioning. There is only one opinion of record that interprets the medical data as causing functional limitations, and the ALJ essentially rejected that entire opinion. This Court has consistently noted that formulating a mental residual functional capacity based on raw medical evidence is generally beyond the lay person's capabilities. So, for example, in *Deshotel v. Berryhill*, 313 F. Supp. 3d 432, 435 (W.D.N.Y. 2018), the Court observed that

> the leeway given to ALJs to make "common sense judgments" does not necessarily extend to the assessment of mental limitations, which are by their very nature "highly complex and individualized." *Nasci v. Colvin*, 2017 WL 902135 at *9, 2017 U.S. Dist. LEXIS 31937 (N.D.N.Y. 2017) (because mental limitations determinations are extremely complex, an ALJ's mental RFC finding cannot be rendered solely on common sense, but requires medical opinion evidence).

As succinctly stated in *Pichardo v. Comm'r of Soc. Sec.*, 714 F. Supp. 3d 183, 198 (E.D.N.Y. 2024)

> an ALJ's RFC determination may still be valid even when it "does not perfectly correspond with any of the opinions of medical sources cited in his decision." *Trepanier [v.. Comm'r of Soc. Sec. Admin.*, 752 F. App'x [75, (2d Cir. 2018)] at 79. Nonetheless, there must be some evidence underlying the ALJ's RFC, as to find otherwise would allow the ALJ "to substitute his own expertise or view of the medical proof for the treating physician's opinion." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). Medical records and findings alone cannot provide the substantial evidence necessary to make an RFC determination in the absence of medical opinion evidence. *See Pearson v. Comm'r of Soc. Sec.,* No. 20-cv-3030 (AMD), 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021).

In that case, the Court determined that once the ALJ had rejected all of the medical opinions on the issue of mental limitations, there was insufficient remaining evidence to allow the ALJ to formulate a mental residual functional capacity.

Here, the Court agrees that absent some persuasive medical opinions dealing with Plaintiff's mental work-related limitations, or some other significant evidence on that issue, the ALJ did not have a substantial basis for crafting what amount to very specific work-related mental capabilities (and, by implication, rejecting others). It is clear that the ALJ relied wholly on two bases for his decision, those being the results of clinical observations reported in the records (*i.e.* raw medical data), and the other being Plaintiff's own testimony. However, that

testimony was not directly related to how Plaintiff was able perform in a work setting. In fact, if her testimony is considered as a whole, she reported an inability to work due to depression and anxiety and said she could not even go shopping due to getting "panicky around a lot of people." (Tr. 46). Overall, on this specific record, the ALJ did not have enough reliable evidence on which to make the mental residual functional capacity finding that he did, and this is grounds for remand.

**B. Evaluation of Treating Source Opinion**

Having found that Plaintiff's third claim of error provides a basis for remand, it is technically unnecessary for the Court to address the claim that the ALJ did not properly evaluate physician's assistant Galley's opinion. However, the basis of this claim appears to be simply that the ALJ did not properly characterize the objective physical findings in the record. The Court agrees with the Commissioner that the ALJ had a reasonable basis for his conclusions about the extent to which the objective findings did or did not support Ms. Galley's opinions, and therefore this claim, by itself, would not justify an order of remand.

**V. CONCLUSION AND ORDER**

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 8), **DENIES** the Commissioner's motion (Doc. 15), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**